| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>----------------------------------------------------------------X<br>JOHN LUNDIE,<br><br>       Plaintiff,<br><br>   -against-<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br><br>       Defendant.<br>----------------------------------------------------------------X | For Online Publication Only<br><br><br><br><br><br>**MEMORANDUM &<br>ORDER**<br>19-CV-4196 (JMA) |

**APPEARANCES:**

John Lundie
 *Pro se Plaintiff*

Mark J. Lesko
 Acting United States Attorney
Paulina Stamatelos
 Assistant United States Attorney
271 Cadman Plaza East, Seventh Floor
Brooklyn, NY 11201
 *Attorneys for Defendant*

**AZRACK, United States District Judge:**

 Pro se plaintiff John B. Lundie ("Plaintiff") seeks review of the final administrative decision by the Commissioner of Social Security (the "Commissioner"), reached after a hearing before an administrative law judge ("ALJ"), denying his application for disability insurance benefits ("DIB") under the Social Security Act (the "Act").  Before the Court are the Commissioner's motion for judgment on the pleadings, (ECF No. 11), and Plaintiff's cross-motion, (ECF No. 13).[1]  Because the ALJ's decision was supported by substantial evidence and

---

[1] Plaintiff incorrectly labeled his motion as a "motion for continuance under Rule 56(f)(2)."  (ECF No. 13.)  The Court will treat Plaintiff's motion as a motion for judgment on the pleadings.

1

applied the proper legal standards, the Commissioner's motion is **GRANTED**, and Plaintiff's cross-motion is **DENIED**.

Plaintiff also filed a motion for appointment of counsel on March 19, 2021. (ECF No. 19.) That motion is **DENIED**.

## I. BACKGROUND

### A. Procedural History

On January 8, 2015, Plaintiff filed an application for DIB with the Social Security Administration ("SSA"), alleging disability as of November 8, 2006, due to a memory and focus impairment. (Tr. 59.)[2] On March 18, 2015, the SSA denied Plaintiff's claim for DIB because he was found not disabled. (Tr. 59-69.)

Following the denial of his claim, Plaintiff requested a hearing before an ALJ on May 19, 2015. (Tr. 70-71.) Plaintiff appeared pro se before ALJ Alan B. Berkowitz ("ALJ Berkowitz" or the "ALJ") for an initial hearing on June 15, 2017, which was adjourned to allow Plaintiff an opportunity to obtain representation and produce additional medical evidence.[3] (Tr. 28-36.) On September 28, 2017, a second hearing was held at which Plaintiff, appearing pro se, testified along with vocational expert ("VE") Rocco J. Meola. (Tr. 37-58.)

In a December 29, 2017 decision, ALJ Berkowitz denied Plaintiff's claim and found that he was not disabled under the Act from his alleged onset date of November 8, 2006 through December 31, 2011, the date his Title II disability insured status expired. (Tr. 20-24.) Plaintiff subsequently requested review by the Appeals Council. (Tr. 107-113.) When the Appeals Council

---

[2] Citations to "Tr." refer to pages of the certified administrative record filed by the Commissioner. (ECF No. 15.)

[3] At the time of the first hearing, there were only eight pages of medical evidence in the record. (Tr. 30.)

denied Plaintiff's request on November 29, 2018, ALJ Berkowitz's decision became the final decision of the Commissioner. (Tr. 13-15.) This appeal followed. (ECF No. 1.)

**B. Factual Background**

Plaintiff was born on March 12, 1970 and was thirty-six years old at the time of the onset of his alleged disability. (Tr. 59.) He graduated from college in 1992, and law school in 2000, but is not admitted to the bar. (Tr. 43, 131.) At the time of the hearing, he lived with his parents and cared for them by helping with household chores and the preparation of meals. (Tr. 46, 137-38.)

Plaintiff's function report indicates that he socialized with his family, attended church weekly, and denied having problems getting along with others, including authority figures. (Tr. 142, 144.) He prepared simple meals, did laundry, ironed, did dishes, and performed general household maintenance. (Tr. 139-40.) Plaintiff was able to shop for groceries and clothes in-person, by mail, and on the computer. (Tr. 141.) He could handle a savings account, count change, and pay bills. (Tr. 141.)

Plaintiff's past relevant work was as an associate in a law firm, a fishery technician, a document reviewer, and a retail sales associate. (Tr. 146-50, 43.) He stated he has not worked since the alleged onset date in November 2006 because his contract position as a document reviewer expired. (Tr. 45-46.) He testified he could follow written and spoken instructions, but had difficulty with attention and concentration, including reading books and completing household tasks. (Tr. 144-45.)

Plaintiff testified that he was having memory problems, including long-term memory issues and not being able to remember where he placed things or what he ate for breakfast. (Tr. 44-45, 47.) He associates his memory problems with his arrest in 2004, which resulted in him being medicated. (Tr. 46.) Plaintiff stated that he is inattentive, forgetful, and would have

3

difficulty completing "repetitive work." (Tr. 50.) He testified that he had "no functioning day-to-day memory," but explained that he felt that he "function[ed] pretty well." (Tr. 47-48.) Plaintiff indicated that he was not receiving psychiatric treatment at the time of the hearing because of no "manifest [ ] need." (Tr. 42.) He stated that he had Medicaid insurance in 2014 for an eleven-month period after being committed in 2014, but he allowed the insurance to lapse. (Tr. 47-48.)

## C. Relevant Medical Evidence

The administrative record contains eight pages of medical evidence, including documents from Stony Brook University Medical Center ("Stony Brook") and Brookhaven Memorial Hospital Medical Center ("Brookhaven"). (Tr. 30, 202-07.) The earliest medical evidence in the record is from November 15, 2014, the date Plaintiff was involuntarily taken by police to a comprehensive psychiatric emergency program at Stony Brook. (Tr. 202, 205.) Upon Plaintiff's discharge from Stony Brook, on November 17, 2014, he was admitted to Brookhaven. (Tr. 202-06, 134.) Brookhaven treatment notes show that Plaintiff had previously been admitted to Greenport Hospital (currently known as Stony Brook) in 2004 for psychiatric treatment, after which he was prescribed Abilify for a few months. (Tr. 205.) Plaintiff blames this drug for his alleged disability. (Tr. 205.) With regard to his November 17, 2014 admission, Plaintiff was diagnosed by Dr. Satpal Rathour, M.D. ("Dr. Rathour") with paranoid schizophrenia and was treated with Haldol and lithium. (Tr. 206.) Upon his discharge on December 23, 2014, Plaintiff agreed to apply for Medicaid insurance and to continue with his medications including lithium, Haldol Decanoate, Cogentin, and Haldol. (Tr. 205-06.)

Plaintiff was notified via letter that he was being referred for a consultative examination scheduled for June 15, 2017. (Tr. 211.) After Plaintiff failed to appear for the exam, he was

4

notified via letter that it was rescheduled for July 5, 2017. (Tr. 195, 211.) Plaintiff failed to appear for the July 2017 examination as well. (Tr. 195, 211.)

Plaintiff testified that the only records missing from his file were the results from an October 2015 EEG and a January 2016 MRI at Huntington Hospital. (Tr. 41-42.) The ALJ informed Plaintiff that he would "attempt to get the Huntington Hospital records," and that he would consider anything else Plaintiff wanted to submit. (Tr. 57.) He also noted that Plaintiff was not currently in treatment. (Tr. 44.)

### D. Vocational Expert Testimony

Vocational expert Rocco Meola (the "VE") also testified at the administrative hearing. (Tr. 52-54.) ALJ Berkowitz asked the VE to consider a hypothetical individual with the same age, education, and work experience as Plaintiff, who is limited to work along all exertional levels, involving simple, routine, repetitive tasks, in a low-stress environment requiring no more than occasional interaction with the public and coworkers. (Tr. 53.) The VE testified that, consistent with the Dictionary of Occupational Titles ("DOT"), this hypothetical individual could not perform Plaintiff's past work, but could perform the jobs of microfilm mounter, mail sorter, and inspector-packer. (Tr. 54.)

### E. The ALJ's Decision

ALJ Berkowitz issued his decision on December 29, 2017, applying the five-step process described below, pursuant to 20 C.F.R. § 404.1520. (Tr. 20-24.) At step one, ALJ Berkowitz concluded that Plaintiff had not engaged in substantial gainful activity since November 8, 2006. (Tr. 22.) At step two, the ALJ found that "there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment." (Tr. 23.) Specifically, he noted that "[t]he record is completely devoid of any evidence of an impairment or treatment prior

5

to the claimant's date last insured of December 31, 2011." (Tr. 23.) Therefore, ALJ Berkowitz ended his analysis at the second step and found that Plaintiff was not disabled. (Tr. 24.)

## II. DISCUSSION

### A. Motion for Appointment of Counsel

On March 19, 2021—almost a year after the parties filed their briefs—Plaintiff filed a motion for appointment of counsel.

Pursuant to 28 U.S.C. § 1915(e)(1), courts may appoint an attorney to represent someone who is unable to afford counsel. Courts possess broad discretion when determining whether appointment is appropriate, "subject to the requirement that it be 'guided by sound legal principle.'" Cooper v. A. Sargenti Co., Inc., 877 F.2d 170, 171-72 (2d Cir. 1989) (quoting Jenkins v. Chemical Bank, 721 F.2d 876, 879 (2d Cir. 1983)). According to the Second Circuit:

> [T]he district judge should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

Hodge v. Police Officers, 802 F.2d 58, 61-62 (2d Cir. 1986). The Second Circuit also held that these factors are not restrictive, and that "[e]ach case must be decided on its own facts." Id. at 61.

The Court has reviewed Plaintiff's application together with the pleadings and briefs and finds that the appointment of counsel is not warranted at this time. Plaintiff's claim does not seem likely to be of substance. In any event, even assuming that this threshold requirement of Hodge is satisfied, the Court finds that appointment of counsel is not warranted. Plaintiff, who graduated from law school, was able to draft a brief addressing the key issue in this appeal—the ALJ's duty to develop the record. Plaintiff has demonstrated an ability to present his case on his own behalf.

Moreover, because social security cases are largely decided on the administrative record based on arguments presented in written memoranda, skill in presenting evidence and cross-examination is not required. Finally, the Court notes that Plaintiff's motion for appointment of counsel discusses his attempts to obtain a 2018 MRI, which, for the reasons discussed below, is irrelevant to the instant appeal.

Accordingly, the Court denies Plaintiff's motion for appointment of counsel.

## B. Social Security Disability Standard

Under the Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is disabled when his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A).

In order to collect DIB under Title II of the Act, a claimant must establish that he or she became disabled prior to the expiration of his or her insured status. 42 U.S.C.§§ 423(a)(1)(A), 423(c)(1). "Evidence of an impairment which reached disabling severity after the expiration of insured status, or which was exacerbated after such expiration, cannot be the basis for entitlement to a period of disability and disability insurance benefits, even though the impairment itself may have existed before the claimant's insured status expired." Davis v. Colvin, No. 14-CV-06373, 2016 WL 368009, at *2 (W.D.N.Y. Feb. 1, 2016) (citing Arnone v. Bowen, 882 F.2d 34, 37-38 (2d Cir. 1989)).

The Commissioner's regulations set out a five-step sequential analysis by which an ALJ determines disability. 20 C.F.R. § 404.1520. The analysis is summarized as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008) (quoting Green–Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)). At any of the previously mentioned steps, if the answer is "no," then the analysis stops and the ALJ must find claimant not disabled under the Act. 20 C.F.R. § 404.1520. The claimant bears the burden at the first four steps; but at step five, the Commissioner must demonstrate that "there is work in the national economy that the claimant can do." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

## C. Scope of Review

In reviewing a denial of disability benefits by the SSA, it is not the function of the Court to review the record de novo, but to determine whether the ALJ's conclusions "'are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard.'" Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (quoting Beauvoir v. Chater, 104 F.3d 1432, 1433 (2d Cir. 1997)). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "'To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Thus, the Court will not

8

look at the record in "isolation but rather will view it in light of other evidence that detracts from it." State of New York ex rel. Bodnar v. Sec. of Health and Human Servs., 903 F.2d 122, 126 (2d Cir. 1990). An ALJ's decision is sufficient if it is supported by "adequate findings supported by evidence having rational probative force." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).

Conversely, a remand for further proceedings is warranted in cases where the Commissioner has failed to provide a full and fair hearing, to make sufficient findings, or to have correctly applied the law and regulations. See Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999); see also 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.").

### D. Analysis

The record shows that Plaintiff was last employed in 2006. (T. 44.) In his decision, the ALJ determined Plaintiff met the insured status requirements of the Social Security Act ("the Act") through December 31, 2011. (T. 22.) Accordingly, to qualify for DIB, Plaintiff was required to demonstrate that he was under a disability that began on or before December 31, 2011. In support of his motion, Plaintiff argues that the ALJ did not properly develop the record and the ALJ's decision was not supported by substantial evidence. The Court disagrees. For the reasons set forth below, the Court finds that the ALJ properly developed the record and determined that Plaintiff was not under a disability as defined by the Act prior to his date last insured and therefore was not eligible for DIB benefits.[4]

---

[4] Plaintiff's contention that his 2004 and 2014 arrests violated his constitutional rights and that he is requesting a "continuance" "in order to obtain affidavits and develop the evidentiary record" "that would support [his] assertion of false arrest and medical malpractice, leading to damages. . ." is irrelevant to his disability determination and therefore his request for a continuance is denied. (See Pl.'s Mot. at 9-10.)

1. **The ALJ Properly Developed the Record**

"Whether the ALJ has met his duty to develop the record is a threshold question. Before reviewing whether the Commissioner's final decision is supported by substantial evidence . . . the court must first be satisfied that the ALJ provided Plaintiff with a full hearing under the Secretary's regulations and also fully and completely developed the administrative record." Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 261-62 (S.D.N.Y. 2016) (internal quotation marks and citations omitted); see also 42 U.S.C. § 405(g). Although "[t]he claimant has the general burden of proving that he or she has a disability within the meaning of the Act," nevertheless, "because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." Burgess, 537 F.3d at 128 (internal quotation marks and brackets omitted). Moreover, where the claimant appears pro se, the ALJ has a heightened duty to "protect a pro se claimant's rights 'by ensuring that all of the relevant facts [are] sufficiently developed and considered." Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990) (alteration in original) (quoting Hankerson v. Harris, 636 F.2d 893, 895 (2d Cir. 1980)). Remand to the Commissioner is appropriate when there are "obvious gaps" in the record and the ALJ has failed to seek out additional information to fill those gaps. See Lopez v. Comm'r of Soc. Sec., 622 F. App'x. 59, 60 (2d Cir. N.Y. 2015) (citing Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999)).

"[T]he claimant has the initial burden to demonstrate the existence of a disabling condition by furnish[ing] medical and other evidence that [the Commissioner] can use to reach conclusions about [the claimant's] medical impairment(s)." Tavarez v. Astrue, No. 11-CV-2784, 2012 WL 2860797, at *3 (E.D.N.Y. July 11, 2012) (internal quotation marks and citation omitted). Thus, though an ALJ must make reasonable efforts to aid an applicant in retrieving necessary medical reports from his medical sources, "an ALJ is not required to attempt to obtain additional evidence

10

to fill any gap in the medical evidence; rather an ALJ is required to do so only where the facts of the particular case suggest that further development is necessary to evaluate the claimant's condition fairly." Francisco v. Commissioner of Social Security, No. 13-CV-1486, 2015 WL 5316353, at *11 (S.D.N.Y. Sept. 11, 2015) (citing Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 32 (2d Cir. 2013)).

      Here, the Court finds that ALJ Berkowitz provided Plaintiff with a fair hearing and made reasonable efforts to develop the record. Plaintiff failed to furnish any evidence that he suffered from a severe medical impairment prior to his date last insured to support his disability claim. During Plaintiff's June 15, 2017 hearing, ALJ Berkowitz noted that the hearing file only contained eight pages of medical records. (Tr. 30.) Following his questioning of Plaintiff, the ALJ provided Plaintiff with an opportunity to adjourn the hearing in order to retain representation and obtain the relevant medical records. (Tr. 31-32.) However, by the time of Plaintiff's second hearing, on September 28, 2017, Plaintiff had not submitted any additional medical evidence.[5] (Tr. 39-40.) ALJ Berkowitz questioned Plaintiff about any missing medical evidence, and Plaintiff responded that the only records missing from his file were the results from an October 2015 EEG and a January 2016 MRI, both of which were performed at Huntington Hospital. (Tr. 41-42.) The ALJ informed Plaintiff that he would attempt to obtain the Huntington Hospital records for him and that if Plaintiff had any other evidence that he wanted in the record, he would consider it. (Tr. 42, 57.) Accordingly, that same day, the ALJ sent a written request to Huntington Hospital requesting medical records from October 29, 2015 through the present date. (Tr. 200.) Huntington Hospital never responded to the request. (Tr. 20.)

---

[5] ALJ Berkowitz informed Plaintiff that "[a]s the record [ ] stands now, it is completely inadequate for me to form any decision about any condition you have." (Tr. 39.)

11

Notably, these records post-date the date last insured by nearly four years. Plaintiff has not shown that the missing 2015 and 2016 medical records have any significance to his claim of disability for the period November 2006 through December 2011.[6] See Tavarez, 2012 WL 2860797, at *3 ("The claimant also bears the burden, when contending that the ALJ failed to develop the record, to show that the missing evidence was significant and harmful to h[is] claim.").

To the extent Plaintiff is asserting that the ALJ erred by not obtaining his 2004 hospital records, that claim also fails. Those records predate his alleged onset date by two years and there is no evidence that Plaintiff received any subsequent treatment between November 2006 and December 2011.

Therefore, as neither Plaintiff's testimony, nor any evidence in the record, suggests the existence of further medical evidence from the relevant time period, the ALJ did not fail to meet his obligation to develop the record.

Furthermore, Plaintiff's failure to attend his scheduled consultative examinations preclude him from claiming that the ALJ failed to develop the record. See Maroulis v. Colvin, No. 16-CV-2427, 2017 WL 7245388, at *19 (S.D.N.Y. Jan. 18, 2017) (where the ALJ cannot obtain medical reports from the claimant's relevant treating physicians, or the record is otherwise "insufficient to make a disability determination," the regulations provide "that the ALJ should ask the claimant to attend one or more consultative evaluations.") (citing 20 C.F.R. §§ 404.1512(e), 404.1517). Applicable regulations require claimants to cooperate with the agency's request for medical evidence, including submitting to medical examinations. See 20 C.F.R. § 416.916. If a claimant

---

[6] Moreover, Plaintiff testified that the MRI report he sought to add to the record as medical evidence "is false." (Tr. 51.) Specifically, Plaintiff testified that he "think[s] the report is exactly the opposite of what the actual scan would show." (Tr. 51.)

fails to attend an evaluation without "good reason," the ALJ is required to issue a decision based upon the available evidence. See 20 C.F.R. § 416.918(a).[7]

Here, the SSA scheduled two consultative examinations of Plaintiff—he failed to appear for both. Therefore, Plaintiff cannot claim that the ALJ failed to develop the record. See, e.g., Matta v. Colvin, No. 12-CV-5290, 2016 WL 524652 at *10 (S.D.N.Y. Feb. 8, 2016). ("[W]here claimants have refused to acknowledge, attend, or cooperate at scheduled consultative examinations or have failed to argue that they had good reasons for not attending such examinations, courts have rejected claims that the ALJ failed to develop the record."); Perrelli v. Comm'r of Soc. Sec., No. 18-CV-04370, 2020 WL 2836786, *5 (E.D.N.Y. 2020) ("Courts in this Circuit have held that where a claimant fails to appear at a scheduled consultative examination without explanation, the ALJ has no further duty to develop the record.").[8]

Thus, as Plaintiff testified that there was no missing medical evidence prior to the date last insured, and he failed to attend the SSA's consultative examinations, Plaintiff's contention that the ALJ failed to develop the record is without merit.

---

[7] Examples of "good reason" for failing to participate include: (1) illness on the date of the scheduled examination; (2) failure to receive timely notice of the examination; (3) receipt of incorrect or incomplete information about the time, place, or physician involved with the examination; or (4) death or serious illness in the claimant's immediate family. 20 C.F.R. § 416.918(b).

[8] Plaintiff claims, in his brief, that he failed to appear for both his June 2017 and July 2017 scheduled consultative examinations because "he was not notified in advance and the notices he received did not state that they were made at the direction of the Social Security Administration." (Pl. Mot. at 4.) Though failure to receive timely notice of the examination can constitute good cause for failing to participate, Plaintiff's attempted excuse does not establish good cause. First, Plaintiff's statement in his brief about these notices is not admissible evidence. Plaintiff—who graduated law school—did not submit an affidavit on this issue. Second, even if it is proper to consider the statements in Plaintiff's brief, they are simply too vague to constitute good cause. Plaintiff never squarely states when he received the notices at issue. Moreover, the fact that he was sent two notices and failed to appear on both occasions also weighs against the credibility of the vague assertions in his brief. In any event, even if Plaintiff could establish good cause for failing to appear at his consultative examinations, as explained earlier, Plaintiff's claim that the ALJ failed to develop the record fails on other grounds, including Plaintiff's failure to identify any relevant medical evidence that the ALJ should have attempted to obtain. See Tavarez, 2012 WL 2860797, at *3.

13

## 2. **Substantial Evidence Supports the ALJ Decision**

Substantial evidence supports the ALJ's finding that Plaintiff was not disabled prior to his last insured date.

Applying the five-step process, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity since November 8, 2006. (Tr. 22.) The parties do not contest this finding and it is supported by substantial evidence.

At step two, the ALJ found that "[t]hrough the date last insured, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment." (Tr. 23.) Accordingly, the ALJ ended his analysis at the second step and found that Plaintiff was not disabled. (Tr. 24.)

Specifically, ALJ Berkowitz explained that "the record is completely devoid of an[y] evidence of an impairment or treatment prior to claimant's date last insured of December 31, 2011." (Tr. 23.) The ALJ's decision references the only medical evidence in the record—the November 2014 and December 2014 records from Stony Brook and Brookhaven, which post-date Plaintiff's date last insured by nearly three years. (Tr. 23, 202-06.) These records relate to an incident on November 14, 2014 in which police officers escorted Plaintiff to Stony Brook because he had been picking his skin until it bled. (Tr. 205.) Following Plaintiff's discharge from Stony Brook, he was admitted to Brookhaven on November 17, 2014, where he was diagnosed with paranoid schizophrenia.[9] (Tr. 205-06.) Though the Brookhaven treatment records mention a prior psychiatric admission in 2004, which was two years before his November 8, 2006 alleged onset, there was no recorded diagnosis. (Tr. 205-06, 45.)

---

[9] In his motion papers, Plaintiff contends that Dr. Rathour's diagnosis of paranoid schizophrenia "is without factual basis" and therefore irrelevant to the disability determination. (Pl.'s Mot. at 9.) However, the ALJ's decision denying disability benefits did not rely on this diagnosis.

14

Wholly lacking from the record is any medical evidence to support Plaintiff's disability claim from his alleged onset date of November 8, 2006 through December 31, 2011, the date his insured status expired. As discussed above, ALJ Berkowitz's decision acknowledges Plaintiff's testimony that the only medical evidence missing from the record included test results from an EEG in 2015 and an MRI in 2016—records that post-date Plaintiff's date last insured by four and five years, respectively. (Tr. 23, 41-42.) Evidence of a purported disability four years after December 31, 2011 cannot serve as the basis for a finding of disability before the end of the period at issue because Plaintiff had to be insured when his disability began. See 20 C.F.R. § 404.131(a) ("you must have disability insured status in the quarter in which you become disabled"); see, e.g., Arnone, 882 F.2d at 37-38 ("regardless of the seriousness of his present disability, unless [Plaintiff] became disabled before, [his date last insured], he cannot be entitled to benefits.") (citations omitted)); Behling v. Comm'r of Soc. Sec., 369 F. App'x 292, 294 (2d Cir. 2010) (summary order) (claimant's current condition not relevant because she "was required to demonstrate that she was disabled as of the date on which she was last insured" and "[a]ny new impairments are not relevant") (citations omitted)); Flanigan v. Colvin, 21 F. Supp. 3d 285, 302 (S.D.N.Y. 2014) (denying benefits where "at best the evidence show[ed] that [Plaintiff] experienced progressively worsening symptoms that eventually became disabling" after his date last insured).

Furthermore, ALJ Berkowitz's conclusion that Plaintiff was not disabled is supported by Plaintiff's own statements and testimony. Plaintiff was not undergoing psychiatric treatment at the time of the September 2017 hearing and he did not testify that he underwent any treatment between November 2006 and December 2011. (Tr. 42.) In fact, despite a psychiatric hospital admission in 2004, Plaintiff maintained gainful employment until the expiration of his contract term in 2006. (Tr. 45-46.) He stated that he was having memory problems at that time but that he

15

functioned well with regard to activities of daily living. (Tr. 45.) Plaintiff was able to drive and do household cleaning and cooking but was forgetful about where he left things sometimes. (Tr. 138-41.) Thus, Plaintiff's own statements fail to give any indication that he suffers from a "severe impairment."

In sum, ALJ Berkowitz's decision at step two that Plaintiff was not entitled to DIB is supported by substantial evidence, "or rather the absence of medical evidence during the [2006-2011] period in issue." Flanigan, 21 F. Supp. 3d at 303 ("Social Security regulations require that when there is no medically determinable impairment, that is, an impairment verified by medical signs or laboratory findings, the application must be denied at step 2 of the sequential evaluation process because there is no severe impairment . . .") (citation omitted). See also Reynolds v. Colvin, 570 F. App'x 45, 47 (2d Cir. 2014) (summary order) (holding that the "lack of supporting evidence on a matter where the claimant bears the burden of proof, . . . can constitute substantial evidence supporting the denial of benefits") (citing Talavera v. Astrue, 679 F.3d 145, 153 (2d Cir. 2012)). Therefore, ALJ Berkowitz's conclusion that Plaintiff was not disabled is supported by substantial evidence. Accordingly, the Commissioner's motion is **GRANTED**, and Plaintiff's motion is **DENIED**.

### III.    CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for appointment of counsel, GRANTS Defendant's motion for judgment on the pleadings and DENIES Plaintiff's cross-motion.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that, should Plaintiff seek in forma pauperis status for the purpose of an appeal, any appeal from this order would not be taken in good

faith and therefore in forma pauperis status is denied.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to close this case and mail a copy of this Order to the pro se Plaintiff.

**SO ORDERED.**

Dated:  March 31, 2021
         Central Islip, New York

                                                      /s/ (JMA)
                                             JOAN M. AZRACK
                                             UNITED STATES DISTRICT JUDGE